UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANTON K. SAMAAN, <br><br> Plaintiff, <br><br> v. <br><br> ST. JOSEPH HOSPITAL, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> )   1:09-cv-00656-JAW <br> ) <br> ) <br> ) <br> ) |

**ORDER**

With a *Daubert*[1] hearing scheduled for hearing in a matter of days, the parties are locked in an intractable dispute over a few hundred dollars about whether the cost of videoconferencing should be split by two or three. Concluding that for purposes of the upcoming hearing, the Defendants' positions are identical, the Court orders the cost of videoconferencing be divided by two.

**I.   STATEMENT OF FACTS**

On October 14, 2010, the Court denied Dr. David Kaplan's motion to exclude the expert testimony of Dr. Ravi Tikoo concerning the likely consequences of his alleged failure to administer tissue plasminogen activator (t-PA). *Order on Mot. in Limine* (Docket # 49). In the Order, however, the Court suggested that "it would benefit from a greater understanding of the foundation for the experts' opinions and from more illuminating and less adjectival advocacy." *Id.* at 9. Taking the Court's cue, Dr. Kaplan moved for a *Daubert* hearing on the expert witness issue.[2] *Def.*

---

[1] *Daubert v. Merrell Down Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).
[2] Dr. Kaplan also moved for reconsideration of the Order and the Court denied that part of the motion.

*David Kaplan, M.D.'s Mot. for Recons. of the Court's Order on his Mot. for Summ. J. or in the Alternative for a* Daubert *Hearing on the Admissibility of the Opinions of the Pl.'s Causation Expert* (Docket # 53). Mr. Samaan responded and Dr. Kaplan replied, and on November 15, 2010, the Court granted the motion for a *Daubert* hearing. *Order Granting Mot. for* Daubert *Hearing* (Docket # 68) (*Order*). On November 17, 2010, the Court held a telephone conference of counsel and encouraged the parties to use videoconferencing to minimize the expense of expert testimony. After consulting with counsel, the Court scheduled the *Daubert* hearing for December 9, 2010.

On December 3, 2010, after being informed that counsel had reached an impasse regarding the upcoming *Daubert* hearing, the Court held another telephone conference. The essence of the dispute is the division of the cost of the videoconferencing, which is estimated to be roughly $2,640.[3] The Plaintiff wants the cost divided by three and the Defendants want the cost divided by two. Under Mr. Samaan's calculation, he would be responsible for about $880 and each Defendant would be responsible for the same; under the Defendants' calculation, Mr. Samaan would be responsible for $1,320, and each Defendant for $660. Thus, as the parties are unable to compromise, the Court must intervene in a dispute involving $440 for the Plaintiff and $220 for each Defendant.

Mr. Samaan's basic point is that his case is against both Dr. Kaplan and St. Joseph Hospital and since there are three parties, the cost of videoconferencing should be split three ways. The Defendants disagree. They contend that when they

---

[3] The parties are now reconciled that they will each be responsible for their own expert witness fees.

wish to be treated as separate defendants, Mr. Samaan objects and insists that they be treated as one.  For example, they point to a discovery dispute in which, at Mr. Samaan's urging, the Magistrate Judge treated the Defendants as one entity for purposes of asking interrogatories.

However, the Defendants maintain that whenever it suits him, Mr. Samaan switches position and demands they be treated separately.  Thus, St. Joseph pressed its understanding that Mr. Samaan's claim against the Hospital is purely a vicarious liability claim, hinging on Dr. Kaplan's liability as its Emergency Room physician, and both Defendants asserted that Mr. Samaan has been playing coy about whether he is going to assert a direct liability claim against the Hospital. They charge that even now, as discovery has closed and trial is looming, they still do not know Mr. Samaan's theory of the case against St. Joseph Hospital.

Mr. Samaan replied in effect that it is Dr. Kaplan who is to blame, since the Doctor has said different things at different times about a critical fact.  When Mr. Samaan was on the plane heading for the United States and began to experience symptoms, a physician volunteered to perform an assessment, diagnosed a stroke, and directed the plane to land quickly.  Further, the physician, presumably realizing that the time of the onset of the stroke was critical, apparently wrote the time down and this critical piece of information was passed to hospital employees. According to Mr. Samaan, Dr. Kaplan has been inconsistent about whether the hospital employees gave him this critical information when Mr. Samaan was in the St. Joseph Emergency Room.  If the hospital employees did so, it is unlikely St.

3

Joseph would be independently liable, but if they failed to do so, there could be a separate basis for liability inculpating the Hospital and exculpating the Doctor. Thus, Mr. Samaan says, he cannot definitively decide whether his claim against St. Joseph Hospital is direct, vicarious, or a combination of the two until Dr. Kaplan definitely decides whether he did or did not receive this critical information.

Finally, Mr. Samaan says that for him a few hundred dollars is a substantial amount of money. He is now significantly disabled from the stroke and is living in New York City on a small monthly allotment. He contrasts his financial straits with the apparent assets of the Defendants and their insurers.

## II.  DISCUSSION

The parties' charges and countercharges over larger issues of discovery, theories of liability, shifting positions, and fundamental fairness frame an uncompromising dispute over a few hundred dollars. The Court is not in a position to resolve each of the parties' multiple grievances. However, the Court observes that the Defendants' argument that the Magistrate Judge's ruling on interrogatories was occasioned by the Plaintiff's shifting theory of the case is erroneous. The Court issued a standard scheduling order in this case, which provided that the number of interrogatories would be limited to thirty per side. *Scheduling Order* at 1 (Docket # 7) (stating that "[d]iscovery is limited to not more than 30 interrogatories *per opposing side*") (emphasis supplied); *see Report of Telephone Conference and Order* at 2 (Docket # 19). The Magistrate Judge's ruling on this issue was a routine application of the standard provisions of the scheduling

4

order. The Magistrate Judge made it clear that if additional discovery became necessary and if the two Defendants had "divergent interests," the parties could return for further discussion. *Report of Telephone Conference and Order* at 2. The Defendants elected not do so.

Turning to the issue before the Court, the Court resolves the question by focusing on the subject of the *Daubert* hearing. Mr. Samaan listed Dr. Tikoo as an expert witness to testify that if Dr. Kaplan had administered a timely dose of t-PA, it is likely the stroke would not have been so severe. Since in this case the allegations of "negligence and harmful result" are not "sufficiently obvious as to lie within common knowledge," *Cyr v. Giesen*, 150 Me. 248, 251-52, 108 A.2d 316, 318 (1954), expert testimony is mandatory to prove a medical malpractice case of this type. *Michaud v. Blue Hill Mem. Hosp.*, 2008 ME 29, ¶ 5, 942 A.2d 686, 688; *Cox v. Dela Cruz*, 406 A.2d 620, 622 (Me. 1979) (stating that "[o]rdinarily, the plaintiff can discharge [her] burden only through expert medical testimony establishing: (1) the appropriate standard of medical care, (2) the defendant departed from that recognized standard, and (3) the conduct in violation of the standard was the proximate cause of the plaintiff's injury"). To prove his claim against St. Joseph under either vicarious or direct liability and to prove his claim against Dr. Kaplan, Mr. Samaan must secure the admission of Dr. Tikoo's expert testimony. In other words, whether the ER employees at St. Joseph notified Dr. Kaplan of the plane physician's note will not be reached unless Mr. Samaan presents the essential predicate of expert testimony to demonstrate that Dr. Kaplan and/or St. Joseph are

5

liable under any theory. Thus, the admissibility of Dr. Tikoo's testimony is directed equally against both Dr. Kaplan and St. Joseph.

Because for purposes of the *Daubert* hearing there is no divergence between the positions of the two Defendants, it is proper to treat them as one for purposes of the cost of the videoconference, and the Court orders the cost of the videoconference be split by two. The Court is sensitive to Mr. Samaan's difficult financial circumstances, which is one reason it suggested that the parties consider videoconference testimony, but the Court will not tailor its legal ruling based on the fact that one party is impecunious while the others are well-heeled.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 6th day of Debember, 2010