UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANTON K. SAMAAN, | ) |
|     Plaintiff, | ) |
| v. | ) 1:09-cv-00656-JAW |
| ST. JOSEPH HOSPITAL, et al., | ) |
|     Defendants. | ) |

**ORDER DENYING MOTION FOR RECONSIDERATION**

The Court denies the Defendants' motion for reconsideration of the Court's earlier denial of their motion for summary judgment.

**I.    STATEMENT OF FACTS**

**A.    Procedural History**

On July 2, 2010, David Kaplan, M.D. moved for summary judgment against Anton Samaan, contending that because Mr. Samaan had failed to present competent expert testimony to support his claims against the doctor, Dr. Kaplan was entitled to summary judgment. *Def. David Kaplan, M.D.'s Mot. for Summ. J.* (Docket # 24). With his motion for summary judgment, Dr. Kaplan filed a motion *in limine* seeking to exclude the opinions of Mr. Samaan's expert witness. *Def. David Kaplan, M.D.'s Mot.* in Limine *to Exclude Testimony of Ravi Tikoo, M.D.* (Docket # 26). Codefendant St. Joseph Hospital joined Dr. Kaplan's motion. *Def. St. Joseph Hospital's Mot. for Summ. J.* (Docket # 29). On October 14, 2010, the Court denied the motion *in limine* and the motion for summary judgment. *Order on Mot.* in Limine (Docket # 49); *Order Denying Def.'s Mot. for Summ. J.* (Docket # 50).

On October 19, 2010, Dr. Kaplan moved for reconsideration. *Def. David Kaplan, M.D.'s Mot. for Recons. of the Court's Order on his Mot. for Summ. J. or in the Alternative for a* Daubert *Hr'g on the Admissibility of the Opinions of the Pl.'s Causation Expert* (Docket # 53) (*Defs.'* Daubert *Mot.*). Mr. Samaan objected. *Pl.'s Mem. in Opp'n. to Def. Kaplan's Mot. for Recons., or in the Alternative, for* Daubert *Hr'g* (Docket # 65) (*Pl.'s* Daubert *Opp'n.*). On November 15, 2010, the Court denied the motion for reconsideration but granted the motion for a *Daubert* hearing. *Order* (Docket # 68) (*Hr'g Order*). Following a December 9, 2010 testimonial hearing, on December 21, 2010, the Court granted Dr. Kaplan's motion to exclude the expert testimony of Dr. Tikoo. *Order on* Daubert *Hr'g* (Docket # 91) (Daubert *Order*).

On December 23, 2010, Dr. Kaplan and St. Joseph Hospital moved for reconsideration of the Court's October 14, 2010 Order on summary judgment. *Defs. St. Joseph Hosp.'s and David Kaplan, M.D.'s Mot. for Recons. of the Court's Order on Mots. for Summ. J.* (Docket # 94) (*Defs.' Mot.*). On January 11, 2011, Mr. Samaan objected. *Pl.'s Mem. in Opp'n. to Defs. David Kaplan's and St. Joseph Hosp.'s Mot. for Recons. of the Court's Order on Mots. for Summ. J.* (Docket # 99) (*Pl.'s Opp'n.*). On January 13, 2011, the Defendants replied. *Defs.' Joint Reply to Pl.'s Opp'n to Mot. for Recons. of the Court's Order on Their Mot. for Summ. J.* (Docket # 101) (*Defs.' Reply*).

    **B.**    **The Positions of the Parties**

        **1.**    **The Defendants' Position**

Referring to the Court Order on the *Daubert* hearing, the Defendants say that "it is now clear that Plaintiff will not be able to present expert evidence on causation." *Defs.' Mot.* at 3. With the exclusion of Dr. Tikoo's testimony, the Defendants say that Mr. Samaan cannot present evidence that there was a departure from a recognized standard of care that more likely than not caused him injury. *Id.* The Defendants therefore contend they are entitled to summary judgment.

### 2. Plaintiff's Position

Mr. Samaan objects on a number of grounds. First, he says that Rule 59 does "not provide a procedural avenue for the defendants to appeal the denial of a summary judgment motion, because such an order is interlocutory." *Pl.'s Opp'n.* at 2. Mr. Samaan again reminds the Court that he raised this issue when he opposed the Defendants' motion for reconsideration and that he raised the issue again during a November 17, 2010 telephone conference with the Court. *Id.* He says that when he questioned why a *Daubert* hearing was being held, the Court "merely replied: 'Because I want to.'" *Id.* Mr. Samaan contends that Rule 59 is "expressly designed and intended to provide only for motions made *post*-trial, and following the entry of judgment." *Id.* Because the denial of a motion for summary judgment is an interlocutory order, which cannot be appealed under Rule 59, Mr. Samaan says that the motion is out of order. *Id.*

Mr. Samaan says that the "second reason that defendants' current motion must be denied is that the claim for professional negligence is not the only claim

3

asserted in the complaint." *Id.* at 3. He points out that he has a claim for the negligent infliction of emotional distress. *Id.* at 3-4.

Finally, he claims that summary judgment is inappropriate because the record "contains *admissions* by both defendant St. Joseph Hospital and the defendants' joint expert witness, Dr. McKenna, which satisfy the Plaintiff's burden of proof for establishing the proximate cause element of the professional negligence claim." *Id.* at 4 (emphasis in original). Mr. Samaan protests that "[t]he court did not acknowledge or address those facts in the orders denying the motions for summary judgment and the first motion for reconsideration." *Id.* Mr. Samaan instructs that "admissions by a party-opponent are an exception to the prohibition on hearsay testimony and are admissible." *Id.* at 4-5 (citing FED. RULE EVID. 801(d)(2)). To this end, he points to the testimony of Dr. Maryann Walsh, the physician at St. Joseph who admitted Mr. Samaan, and a letter from Dr. Elsayed Hussein, Mr. Samaan's treating physician, who opined that Mr. Samaan should have received t-PA, and if he had, the permanent left-sided paralysis would have been avoided. *Id.* at 5-6. Finally, Mr. Samaan asserts that Defendants' joint expert witness, Dr. Paul Nyquist, "agreed with the ECASS-III recommendation for the extension of the 3 hour administration window, and did so because patients generally received a benefit from the administration of t-PA." *Id.* at 6-7. He goes on to say that Dr. Nyquist testified that "the statistics demonstrate patients receiving t-PA have a *ten or eleven times greater chance of receiving a clinical benefit* than experiencing a negative side-effect." *Id.* at 7 (emphasis in original). Mr. Samaan

4

points to an article in which Dr. Nyquist wrote that the NINDS Study confirmed "**the efficacy of this thrombolytic therapy** when started within 3 hours of the stroke symptom onset." *Id.* at 7 (emphasis in pleading).

Mr. Samaan notes that the Defendants seek reconsideration of "*two* proper orders which denied their motions for summary judgment." *Id.* at 8 (emphasis in original). He complains that "the court's decision to proceed with a *Daubert* hearing of Plaintiff's expert witness, Dr. Tikoo, effectively switched the burden of proof with respect to the sought-after summary judgment from the Defendants and onto the Plaintiff." *Id.* at 9. He demands that the burden return to the Defendants in their motion for reconsideration. *Id.* Finally, he says that the Defendants' reliance on *Curtis v. Porter*, 2001 ME 158 ¶¶ 17-22, 784 A.2d 18, "misses the mark" because if there is a special relationship between the plaintiff and the defendant – such as existed here – the plaintiff may proceed with a negligent infliction of emotional distress claim as an independent tort. *Id.* at 13. To make out a claim for negligent infliction of emotional distress, all that is necessary, according to Mr. Samaan, is his own testimony of his severe emotional distress. *Id.* at 14. Mr. Samaan asserts that the Defendants have failed to present statements of material fact on the negligent infliction of emotional distress claim "as *required* by the Rules". *Id.* (emphasis in original).

### 3. Defendants' Reply

The Defendants reply that the Court has the inherent authority to entertain a motion for reconsideration. *Defs.' Reply* at 1. They observe that the Court also

5

has the inherent authority to hold a *Daubert* hearing as part of its gate-keeping function. *Id.* The Defendants further reply that a claim for negligent infliction of emotional distress "is not a claim that can stand alone without a finding of negligence against the defendants." They argue that a claim for negligent infliction of emotional distress may only stand when there exists bystander liability or a special relationship between the actor and the person emotionally harmed. *Id.* at 2-3. They contend that neither exists here. *Id.*

## II.  DISCUSSION

### A.  Motion to Reconsider

Mr. Samaan has vigorously insisted that a motion to reconsider the denial of a motion for summary judgment is procedurally flawed because it amounts to an attempted appeal of an interlocutory order. The Court has traced the source for this incomprehensible argument to the Defendants' miscitation of the proper rule for their motions for reconsideration. As authority for their motions for reconsideration, the Defendants cited Rule 59. *Def.'s* Daubert *Mot.* at 1; *Defs.' Mot.* at 1. Noting that Rule 59 addresses a motion for new trial or a motion to alter or amend judgment, Mr. Samaan has seized on Defendants' citation error and claimed that their motions for reconsideration were somehow impermissible attempts to appeal an interlocutory order. *Pl.'s* Daubert *Opp'n.* at 3; *Pl.'s Opp'n.* at 2.

Mr. Samaan's argument badly conflates an interlocutory appeal with a motion for reconsideration. The Local Rules provide for the filing of a motion for reconsideration:

6

> A motion to reconsider an interlocutory order of the court, meaning a motion other than one governed by Fed. R. Civ. P. 59 or 60, shall demonstrate that the order was based on a manifest error of fact or law and shall be filed within 14 days from the date of the order unless the party seeking a reconsideration shows cause for not filing within that time. Cause for not filing within 14 days from the date of the order includes newly available material evidence and an intervening change in the governing legal standard.

Me. Loc. R. 7(g). Overlooking the Defendants' obvious citation error, the Court viewed the Defendants' motions for reconsideration as garden variety motions under Local Rule 7(g).

Contrary to Mr. Samaan's contentions, the pending motion for reconsideration has nothing to do with an appeal of an interlocutory ruling. A motion for reconsideration directed to the same court that made the original decision is not an appeal and the rules against interlocutory appeals are not material. The Defendants' Local Rule 7(g) motion is simply a vehicle for the Court to reconsider its earlier order based on new facts or law of the case that could affect the Court's earlier ruling. The Court rejects Mr. Samaan's confused attempt to infuse appellate issues into a straightforward motion to reconsider.

### B. *Daubert* Motion

Mr. Samaan's repeated objections to the scheduling of the *Daubert* hearing are also not well taken. Here, the Defendants had filed a motion for summary judgment on the assumption that the Court would grant a companion motion *in limine*. When the Court did not grant the motion *in limine*, the Defendants' motion for summary judgment failed. However, in its order on the motion *in limine*, the Court suggested it would benefit "from a greater understanding of the foundation

7

for the expert's opinions and from more illuminating and less adjectival advocacy." *Order on Mot.* in Limine at 9. Taking the cue, the Defendants moved for a *Daubert* hearing, and the Court granted the motion. *Def.'s* Daubert *Mot.*; *Hr'g Order*.

Having ordered the *Daubert* hearing, the Court scheduled a telephone conference not to discuss whether the *Daubert* hearing should be held, but to discuss its mechanics. Specifically, the purpose of the court-initiated telephone conference was to alert counsel to the availability of cost-saving videoconference procedure and thereby to assist the parties, particularly Mr. Samaan. Both experts were medical doctors from East Coast cities and the Court's intent was to consult with counsel to arrive at a date, time, and manner of presentation that would minimize expense and inconvenience. At the telephone conference, the Court introduced this topic and suggested that the parties consider videoconference testimony. The Court asked counsel whether they had discussed the *Daubert* hearing and its parameters.

At this point, Mr. Flynn immediately informed the Court that counsel had not discussed the *Daubert* hearing. He then proceeded to launch into a prolonged objection in which he raised a number of concerns about the hearing itself. Mr. Flynn informed the Court that he objected to the cost of the hearing especially in light of his client's lack of money. He complained that he had raised a procedural issue that had not been addressed in the hearing order and vociferously expressed his contention that because the Defendants' motion for reconsideration had been filed under Rule 59 and there had been no appeal from the Court's dispositive

8

motion order, he had a procedural concern. He emphatically informed the Court that he did not know why we were proceeding with a *Daubert* hearing to begin with.

The grounds for his objection were and remain frivolous. The Rule 59 objection was impenetrable and his overall objection to any *Daubert* hearing at all was untimely and hopeless. Under Federal Rules 104(a) and 702 and under *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993), the trial court has been entrusted with a gate-keeping function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Following *Daubert*, the "2000 amendments to Rule 702 codify the principle that trial courts must perform their gatekeeping role for all proffered expert testimony." 4 JOSEPH M. MCLAUGHLIN, JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FED. EVID. § 702.05[1][b] (2d ed. 2010). In scheduling the *Daubert* hearing, the Court was acting in accordance with this well known directive. This is not new law.

Cutting to the quick, the Court assured Mr. Flynn that the reason Court was scheduling a discretionary *Daubert* hearing was that the Court in its discretion desired the hearing. The Court went on to explain that the Court would be required to make a Rule 702 determination at some point before Dr. Tikoo testified before a jury. The Court said that if the *Daubert* hearing were delayed until trial, this would require the parties to fully prepare for a trial on the merits and would mean that the Court would hold the *Daubert* hearing immediately before or during trial, which for a host of reasons is impractical. Accordingly, the Court suggested that the experts present their testimony by videoconference in order to minimize expense,

and to allow the parties, including Mr. Samaan, to benefit from an earlier, rather than later resolution of the issue.

Mr. Flynn now quotes a portion of the colloquy out of context, presumably to highlight what he believes is the Court's preemptory and imperious ruling. It was nothing of the kind. The Court granted the motion for a *Daubert* hearing because the Court is obligated to perform its gate-keeping functions under Supreme Court and First Circuit precedent. When a serious issue of scientific reliability has been raised—as it was in this case—for a trial court to grant a motion for a *Daubert* hearing is singularly routine and within its discretion. In short, the Court was doing its job.

### C. Negligent Infliction of Emotional Distress Claim

Mr. Samaan contends that even if he failed to produce admissible expert testimony on the question of causation, he should still be allowed to proceed with a claim that Dr. Kaplan and/or St. Joseph Hospital negligently inflicted emotional distress upon him by failing to timely treat his stroke symptoms with t-PA and thereby causing him severe emotional injury. *Pl.'s Opp'n.* at 13-14. Mr. Samaan assumes that he can proceed with a claim of negligent infliction of emotional distress even though he cannot proceed with a medical malpractice claim. *Pl.'s Opp'n.* at 13 (stating that "a separate claim for negligent infliction of emotional distress may proceed despite other tort claims in the same action when there exists a special relationship between plaintiff and defendant"). Mr. Samaan further

asserts that his testimony alone without expert confirmation is sufficient to prove the elements of the case. *Id.* at 14.

He is wrong. To establish a claim of negligent infliction of emotional distress, a plaintiff must demonstrate 1) that the defendant owed a duty to the plaintiff; 2) that the defendant breached that duty; 3) that the plaintiff was harmed; and, 4) that the breach caused the plaintiff's harm. *Curtis v. Porter*, 2001 ME 158 ¶ 18, 784 A.2d 18, 25; *Korhonen v. Allstate Ins. Co.*, 2003 ME 77 ¶ 17 n.7, 827 A.2d 833, 839 n.7. Tort actions against physicians and hospitals are covered by the Maine Health Security Act (MHSA), 24 M.R.S. §§ 2501 *et seq*. The MHSA defines "action for professional negligence" broadly to include "any action for damages for injury . . . against any health care provider, its agents or employees, or health care practitioner, his agents or employees, whether based upon tort or breach of contract or otherwise, arising out of the provision or failure to provide health care services." 24 M.R.S. § 2502(6). The Court reads the MHSA's reference to "tort" to include the tort of negligent infliction of emotional distress.

To prove a case of professional negligence, a plaintiff must demonstrate that "[t]here is a reasonable medical or professional probability that the acts or omissions complained of proximately caused the injury complained of." 24 M.R.S. § 2502(7)(B). "Except in unusual circumstances . . ., a plaintiff in a medical malpractice case must prove the nature and scope of the defendant's duty by expert medical testimony." *Michaud v. Blue Hill Mem'l Hosp.*, 2008 ME 29, ¶ 5, 942 A.2d 686, 688. At least as regards Dr. Tikoo's proferred testimony, the Court has ruled

11

that Mr. Samaan's allegations of "negligence and harmful result" are not "sufficiently obvious as to lie within common knowledge". *Samaan v. St. Joseph Hosp.*, 1:09-cv-656-JAW, 2010 U.S. Dist. LEXIS 129206 *7 (D. Me. Dec. 6, 2010) (quoting *Cyr v. Giesen*, 150 Me. 248, 251-52, 108 A.2d 316, 318 (1954)).

Framing his medical malpractice claim as a negligent infliction of emotional distress claim does not relieve Mr. Samaan from presenting expert testimony on the critical issues of negligence and causation. If it ultimately turns out that Mr. Samaan does not have an expert to prove—as required by Maine statute—that "[t]here is a reasonable medical or professional probability that the acts or omissions complained of proximately caused the injury complained of," his negligent infliction of emotional distress claim will fail too. 24 M.R.S. § 2502(7)(B).

### D.   Defendant Admissions and Expert Testimony

Finally, Mr. Samaan contends that he is entitled to proceed to jury trial because Drs. McKenna, Walsh, Hussein, and Nyquist each admitted that Dr. Kaplan and St. Joseph were negligent and that their negligence caused injury to Mr. Samaan. *Pl.'s Opp'n.* at 10-12. Of course, if the Defendants' employees or agents made such admissions within the scope their employment or agency, their testimony would be admissible under Rule 801(d)(2).[1] FED. R. EVID. 801(d)(2).

Turning to Dr. McKenna, Mr. Samaan says only that "[a]s raised previously in Plaintiff's memorandum opposing the summary judgment motions, and the first

---

[1] Mr. Samaan criticizes the Court for failing to "acknowledge or address those facts in the orders denying the motions for summary (sic) and the first motion for reconsideration." *Pl.'s Opp'n.* at 4. But the Court ruled in favor of Mr. Samaan on the motion for summary judgment, and the Defendants' first motion for reconsideration focused on Dr. Tikoo's testimony, not on the potential testimony of Drs. McKenna, Walsh, or Hussein.

motion for reconsideration, the record contains *admissions* by both defendant St. Joseph Hospital and the defendant's joint expert witness, Dr. McKenna, which satisfy the Plaintiff's burden of proof for establishing the proximate cause element of the professional negligence claim."[2] *Pl.'s Opp'n.* at 4 (emphasis in original). The Court carefully reviewed Mr. Samaan's opposition to the Defendant's motion for summary judgment and his motion in opposition to the first motion for reconsideration and found no reference to Dr. McKenna in either memorandum. *See Pl.'s Mem. in Opp'n to Def. Kaplan's Mot. for Summ. J.* (Docket # 33); *Pl.'s Mem. in Opp'n. to Def. Kaplan's Mot. for Recons., or in the Alternative, for* Daubert *Hearing* (Docket # 65). Mr. Samaan has waived any assertions about Dr. McKenna's testimony.

Mr. Samaan says that Dr. Walsh, who is employed by St. Joseph Hospital, admitted that the "administration of t-PA, barring contraindications, was ***likely*** to be of benefit to ischemic stroke patients." *Pl.'s Opp'n.* at 5-6 (emphasis in original). Mr. Samaan quotes a portion of Dr. Walsh's deposition in which she agrees that the reason she would hope that t-PA would be administered if she were suffering a stroke is because "the t-PA is likely to be of benefit to you in minimizing the effects of the stroke down the road." *Id.* at 6.

Mr. Samaan then says that Dr. Hussein, Mr. Samaan's treating physician, wrote in 2007 that Mr. Samaan "should have been administered t-PA and if he had, the permanent left-sided paralysis would have been avoided." *Id.* Dr. Hussein's

---

[2] If Mr. Samaan has an argument to make against this motion, he should have stated the argument in his opposition rather than making a general reference to other memoranda, requiring the Court to review other memoranda to discover his argument.

letter is the subject of a pending motion *in limine*. *Def. David Kaplan, M.D.'s Mot. in Limine to Exclude July 5, 2007 Letter from Elsayed Hussein, M.D.* (Docket # 62).

To resolve the expert testimony of Drs. Walsh and Hussein, the Court must perform a standard summary judgment analysis. To start, it refers back to the dueling statements of material fact in the motion for summary judgment. In his statement of additional material fact paragraph 7, Mr. Samaan says:

> Defendant St. Joseph Hospital's treating physician, Maryann Walsh, M.D. testified that administration of t-PA, barring contraindications, was likely to lessen the effect of ischemic stroke.

*Pl.'s Statement of Additional Material Fact* ¶ 7 (Docket # 34) (PSAMF). In his reply, Dr. Kaplan interposed a qualified response and asked that Dr. Walsh's statement be stricken because it is immaterial, it is without foundation, and she is not qualified. *Def.' Kaplan's Reply to Pl.'s Resp. to Def.'s Statement of Material Facts Not in Dispute and Statement of Additional Material Facts* ¶ 7 (Docket 41) (DRPASMF). The Court disagrees with Dr. Kaplan's contentions concerning Dr. Walsh and allows the statement of material fact to stand.

In statement of material fact paragraph 13, Mr. Samaan says:

> Elsayed Hussein, M.D., wrote in 2007 that Mr. Samaan should have been administered t-PA, and if he had, the permanent left-sided paralysis would have been avoided.

PASMF ¶ 13. Dr. Kaplan denied this statement and said it should be stricken. DRPASMF ¶ 13. Dr. Kaplan says that Dr. Hussein's letter is hearsay, that the letter is not authenticated, that the letter does not address the causation issue on summary judgment, that Dr. Hussein is not qualified, that the Plaintiff never

14

designated Dr. Hussein as an expert witness, and the letter is otherwise unreliable. *Id.* The Court disagrees that Plaintiff's statement of material fact paragraph 13 should be stricken and accepts the statement over Dr. Kaplan's denial.[3]

This leaves Dr. Nyquist. In his statement of additional material fact paragraph eight, Mr. Samaan states:

> Defendant's expert witness, Paul Nyquist, M.D., is generally in agreement with the ECASS-III study's conclusions that t-PA is beneficial in clinical outcomes if administered within 4.5 hours, barring specific contraindications.

PSAMF ¶ 8. Dr. Kaplan interposed a qualified response and moved to strike on the ground that this opinion is not material to any issue before the Court on summary judgment. DRPSAMF ¶ 8. In his statement of additional material fact paragraph nine, Mr. Samaan states:

> The conclusion of the authors of the 2008 ECAS-III study was that administration of t-PA within 3.0 to 4.5 hours of the onset of stroke symptoms produced significant improvement in clinical outcomes compared to patients who did not receive t-PA.

PSAMF ¶ 9. Dr. Kaplan responded by moving to strike on the ground that the statement is not material because "the ECASS-III study showed that patients receiving t-PA were 7.2% more likely to have a better outcome than patients receiving a placebo." DRPSAMF ¶ 9.

---

[3] This bears a word of explanation. By contemporaneous order, the Court is granting a motion *in limine* excluding the July 5, 2010 Hussein letter from evidence. This does not mean that the Court should not accept the letter as authority for the doctor's opinion for purposes of a motion for summary judgment. The Court is required to rule on the merits of the summary judgment as it was filed. The exception is the intervening *Daubert* decision, which is now binding on the parties, and excludes Dr. Tikoo's testimony based on Dr. Nyquist's opinions.

The Court agrees with Dr. Kaplan that neither statement of additional material fact paragraph eight or nine properly presents a countervailing fact. In its Order dated December 21, 2010, the Court extensively analyzed the significance of the ECASS-III study and Dr. Nyquist's views of that study. The Court concluded, among other things, that the ECASS-III study did not sustain Mr. Samaan's burden of proof and that it was Dr. Nyquist's professional opinion that there is no statistical likelihood of improvement from the administration of t-PA. Consistent with that Order, the Court STRIKES statements of material fact eight and nine.

This leaves Drs. Walsh and Hussein. The Defendants' rejoinder to Mr. Samaan's assertions about their expert testimony is only that "[i]f the science does not support Dr. Tikoo's conclusions about causation, it will not support the conclusions of any other medical provider the plaintiff may offer as a witness." *Def.'s Reply* at 4. The Court disagrees. Simply because one expert did not convince the Court that his opinions were well grounded under *Daubert* does not mean that other experts would be similarly unconvincing. Furthermore, in the context of a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-movant and both Dr. Walsh's and Dr. Hussein's statements are on their face sufficient to withstand summary judgment.[4]

## III. CONCLUSION

The Court DENIES the Defendants' Motion for Reconsideration of the Court's Order on Their Motion for Summary Judgment (Docket # 94).

---

[4] If there are other reasons to exclude their testimony, these have not been raised and are not properly addressed in the context of the pending motion for summary judgment.

SO ORDERED.

                                          <u>/s/ John A. Woodcock, Jr.</u>
                                          JOHN A. WOODCOCK, JR.
                                          CHIEF UNITED STATES DISTRICT JUDGE


Dated this 10th day of February, 2011