UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ANTON K. SAMAAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09-cv-00656-JAW |
| | ) | |
| ST. JOSEPH HOSPITAL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION *IN LIMINE* AND TO RECONSIDER RULING ON MOTIONS FOR SUMMARY JUDGMENT**

The Court grants the Defendants' motion to exclude the expert testimony of Drs. Maryann Walsh and Elsayed Hussein concerning the consequences of the failure to administer tissue plasminogen activator (t-PA) to Anton K. Samaan upon his presentation at St. Joseph Hospital with symptoms of ischemic stroke. Because this leaves Mr. Samaan without a causation expert, the Court grants the Defendants' motion to reconsider the Court's order denying summary judgment and orders judgment entered in favor of the Defendants.

## I.      STATEMENT OF FACTS

### 1.      Mr. Samaan's Stroke and Treatment at St. Joseph

On January 14, 2006, Anton K. Samaan boarded a flight in Milan, Italy to return to New York, New York after visiting his family in Egypt for the holidays. During the flight, Mr. Samaan got up from his seat and headed toward the plane's galley for a cup of tea. When Mr. Samaan reached the galley, "he was confronted by a flight attendant who told him that he appeared sick." *Notice of Removal* at Attach

1

2 ¶ 9 (Docket #1), *Compl.* The flight attendant called for doctors on the plane, and at approximately 11:30 a.m., a doctor diagnosed him with "a likely stroke in progress." *Id.* ¶ 10. In accordance with the doctor's instructions, the pilot diverted the plane to the nearest airport. *Id.*

The plane landed in Bangor, Maine and Mr. Samaan reached the emergency department at St. Joseph Hospital not later than 12:40 p.m., where he was treated by emergency room physician David Kaplan, M.D. *Id.* ¶¶ 11, 15. Dr. Kaplan did not administer t-PA. *Id.* ¶ 11. Mr. Samaan has suffered "severe deficits as a result of the ischemic stroke he suffered on 01/14/06." *Id.* ¶ 13. He filed this suit against St. Joseph and Dr. Kaplan, alleging that Dr. Kaplan's failure to administer t-PA violated the standard of medical care and caused him severe damages. *Id.* ¶ 22.

## 2.    Procedural History

On December 21, 2010, after an extensive *Daubert* hearing, the Court barred the testimony of Mr. Samaan's causation expert, Dr. Ravi Tikoo, M.D. *Order on Daubert Hr'g* (Docket # 91) (*Daubert Order*); *See also Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993). On December 23, 2010, Dr. David Kaplan and St. Joseph Hospital (the Defendants) moved for reconsideration of the Court's October 14, 2010 order denying the Defendants' motion for summary judgment. *Defs. St. Joseph Hosp.'s and David Kaplan, M.D.'s Mot. for Recons. of the Court's Order on Mots. for Summ. J.* (Docket # 94) (*Defs' First Mot for Recons.*). On February 10, 2011, the Court issued an order denying Defendants' motion for reconsideration. *Order Denying Mot. for Recons.* (Docket # 106) (*Recons. Order*). In doing so, it found

that the statements of Mr. Samaan's proposed causation experts were "on their face sufficient to withstand summary judgment." *Id.* at 16. The Court noted that "[i]f there are other reasons to exclude their testimony, these have not been raised and are not properly addressed in the context of the pending motion for summary judgment." *Id.* at 16 n.4.

On February 25, 2011, the Defendants filed a motion *in limine*, seeking to exclude the experts' testimony, together with a motion for reconsideration. *Defs.' Joint Mot.* in Limine *to Exclude Test. of Maryann Walsh, M.D. and/or Elsayed Hussein, M.D., and to Recons. Ruling on Mots. for Summ. J.* (Docket # 117) (*Defs.' Mot.*). Mr. Samaan responded on March 3, 2011. *Pl.'s Mem. in Opp'n. to Defs' Joint Mot.* in Limine *to Exclude Test. of Maryann Walsh, M.D. and/or Elsayed Hussein, M.D., and to Recons. Ruling on Mots for Summ. J.* (Docket # 121) (*Pl.'s Opp'n.*). The Defendants replied on March 10, 2011. *Defs.' Joint Reply in Supp. of Defs.' Mot.* in Limine *to Exclude Test. of Maryann Walsh, M.D. and/or Elsayed Hussein, M.D. and to Recons. Ruling on Mots. for Summ. J.* (Docket # 123) (*Defs.' Reply*).

## II.   MOTION *IN LIMINE*

### A.   The Defendants' Contentions

The Defendants move to exclude expert opinion testimony from Maryann Walsh, M.D. and Elsayed Hussein, M.D., on the issue of causation on both procedural and substantive grounds.

#### 1.   Procedural Grounds for Exclusion

The Defendants argue that allowing Drs. Walsh and Hussein to testify would violate both the procedures established by the Court during this litigation and Federal Rule 26(a)(2)(A).  *Id.* at 2-5 (citing FED. R. CIV. P. 26(a)(2)(A)).  They assert that the Court "imposed in this case a rule that each party would be limited to one expert per issue."  *Id.* at 2.  They observe that Mr. Samaan specifically designated Dr. Tikoo as his causation expert and argue that when the Court excluded Dr. Tikoo, "it excluded the only witness the plaintiff was allowed by Court Order to have offer expert testimony on the issue of causation."  *Id.* at 2-3.  They argue that it would be highly prejudicial to allow Mr. Samaan to name new causation experts on the eve of trial.  *Id.* at 3.  The Defendants further note that Mr. Samaan never designated Drs. Walsh or Hussein "as expert witnesses with professional medical opinions on proximate cause."  *Id.* at 3-5.  They assert that both Rule 26 and the Court's Scheduling Order require such a designation and that Mr. Samaan's failure to do so precluded the Defendants from objecting to the designations and preparing for the testimony.  *Id.*

## 2.    Substantive Grounds for Exclusion

Substantively, the Defendants argue that Mr. Samaan cannot establish a foundation to qualify Drs. Walsh or Hussein as expert witnesses on the Efficacy of t-PA in this case.  *Id.* at 6-8.  The Defendants draw the Court's attention to Dr. Walsh's affidavit to support their assertion that she is not qualified to testify as to the efficacy of t-PA.  *Defs.' Mot.* at 7.  She states in her affidavit she is not a neurologist, that she calls a qualified neurologist if she ever "entertain[s] the idea of

4

using t-PA," that she has never administered t-PA to a patient suffering from a cerebral vascular accident, that she is not professionally qualified to offer opinions on the likelihood of benefits to a patient receiving t-PA,[1] that she does not have a professional medical opinion on the percentage of likelihood of improvement for Mr. Samaan had he received t-PA, and that she is "not qualified professionally to offer opinions on causation and/or damages in Mr. Samaan's case." *Defs.' Mot.* Attach 3 (*Walsh Aff.*).

The Defendants then argue that "the [Mr. Samaan] has never produced any information to lay a proper foundation that Dr. Hussein is qualified to testify about the efficacy of t-PA. *Def.'s Mot.* at 7-8. They note that Mr. Samaan has produced medical records that seem to establish "that Dr. Hussein is not a neurologist and that he has a private internal medicine practice at his office in Brooklyn, NY." *Id.* at 7. From that information they conclude that it is unlikely Dr. Hussein has sufficient familiarity with t-PA to dispute the conclusions the "Court has relied on in excluding Dr. Tikoo based on the conclusions of the NINDS Study." *Id.* at 8.

### B. Mr. Samaan's Opposition

#### 1. Procedural Grounds

Mr. Samaan disputes the Defendants' procedural arguments. *Pl.'s Opp'n.* at 4-8. He argues that "[c]ontrary to the defendants' assertion, this court has never 'imposed in this case a rule that each party would be limited to one expert per

---

[1] Dr. Walsh makes this statement to clarify her response to a hypothetical question at her deposition in which she said that t-PA is "likely" to help a patient when given to the right person under the right circumstances. *Defs.' Mot.* Attach. 3 (*Walsh Aff.*).

issue.'" *Id.* at 4 (quoting *Defs.' Mot.* at 2).  He admits to proposing such a rule earlier in the litigation, but says that the Court never adopted that proposal.  *Id.*

Mr. Samaan further argues that he provided the Defendants with a reasonable opportunity to prepare for Drs. Walsh and Hussein's testimony, in compliance with Rule 26.  *Id.* at 6.  He contends that Rule 26(a)(2)(B)'s requirement to provide "summary reports and other information related to expert testimony applies only to those expert witnesses 'retained or specially employed to provide expert testimony in the case.'"  *Id.* (quoting FED. R. CIV. P. 26(a)(2)(B)).  He asserts that the requirement does not apply because neither Dr. Hussein nor Dr. Walsh are so retained or employed.  *Id.*  Mr. Samaan argues that he provided sufficient notice of their testimony by indicating "that treating physicians may be called to testify consistent with their treatment reports, and concerning the extent of injury or disability."  *Id.*  Furthermore, he maintains the Defendants should have been prepared for Drs. Walsh and Hussein to testify on proximate cause because both doctors revealed during discovery that they had opinions on the efficacy of t-PA.  *Id.* at 6-8.

### 2.    Substantive Grounds

The rest of Mr. Samaan's opposition attempts to lay a foundation for expert testimony from Drs. Walsh and Hussein.  *Id.* at 8-12.  Mr. Samaan argues that both Drs. Hussein and Walsh "possess[] the relative criteria to offer opinion testimony concerning the efficacy of t-PA in the treatment of ischemic stroke."  *Id.* at 9.  He notes that Dr. Walsh is board certified in internal medicine and treats individuals

who have suffered ischemic stroke. *Id.* He argues that the reason she does not administer t-PA is that by the time she sees patients the window of opportunity for treatment has passed. *Id.* Mr. Samaan argues that Dr. Walsh is, however, familiar with the standards calling for the administration of t-PA. *Id.* He posits that Dr. Hussein is similarly qualified because "he was the treating physician for Mr. Samaan, a patient recovering from ischemic stroke." *Id.* Regarding Dr. Walsh's averments that she is not qualified, Mr. Samaan contends that Dr. Walsh's affidavit declarations are "offered clearly for the purpose of the present motion only" and "serve only to create an issue of material fact for the jury to determine when addressing the weight to be afforded her opinions." *Id.* at 9-10

Mr. Samaan also relies on scholarship to qualify his experts. He contends that to offer a reliable opinion on the efficacy of t-PA doctors only need "sufficient data available to support their opinion." *Id.* at 10. He cites and attaches a 2008 and a 2009 study, both of which he says conclude that t-PA is more effective than previously thought. *Id.* at 11-12. He asserts that "this supporting literature is sufficient to establish the soundness and reliability of the opinion testimony, and to warrant its admission into evidence at trial." *Id.* at 12.

## C.   The Defendants' Reply[2]

---

[2] The Defendants argue in their reply that the Court should refuse to accept Mr. Samaan's opposition because it exceeded the page limit established by the Local Rule 7(e). *Defs.' Joint Reply in Supp. of Defs.' Mot.* in Limine *to Exclude Test. of Maryann Walsh, M.D. and/or Elsayed Hussein, M.D. to Recons. Ruling on Mots. for Summ. J.* at 1-2 (Docket # 123) (*Defs.' Reply*) (citing D. ME. LOC. R. 7(e)). They note that Mr. Samaan's opposition is twelve pages long and contend that Rule 7(e) limited him to ten pages. The Court overrules the Defendants' objection.

In their reply, the Defendants reassert that Mr. Samaan's expert designations are procedurally deficient. *Defs.' Reply* at 2-3. They argue that Mr. Samaan's specific designation of Dr. Tikoo as a causation expert demonstrates that Mr. Samaan knew he needed "to alert the defendants as to who his experts on causation would be." *Id.* at 2. According to the Defendants, Mr. Samaan's failure to so designate Drs. Walsh and Hussein "means the defendants could not have been expected to anticipate that either of these witnesses were designated as causation experts. . . . [and] that the plaintiff himself never intended to use these witnesses as experts on causation." *Id.* at 2-3. Finally, they note that Mr. Samaan has not argued that his failure to comply with Rule 26 was justified and that it is "clearly prejudicial" to the Defendants. *Id.* at 3.

Substantively, the Defendants assert that Mr. Samaan's opposition does nothing to advance the proposed experts' qualifications and that it "concedes that the foundation for the admissibility of causation testimony is only as good as the available data." *Id.* at 4. The Defendants' argue that Mr. Samaan's reliance on the available data "brings the case back full circle to the issues that were tried and decided as part of the *Daubert* hearing." *Id.* They note that Mr. Samaan cited and attached two abstracts and one medical article but contend that he has failed to explain how they support the "as-yet-to-be-disclosed expert opinions on causation." *Id.* at 5. They argue that the abstract and article on the efficacy of t-PA rehash data considered at the *Daubert* hearing and do not speak to the specific causation question at issue in this case. *Id.* They conclude that "[i]f this is the data that will

be used to support the opinions of Dr. Walsh and Dr. Hussein, then the Court should exclude it for the same reasons it barred Dr. Tikoo's testimony. *Id.*

### D. Analysis

#### 1. *Esposito* and Witness Exclusion

##### a. The Plaintiff's Disclosure Obligations

On January 13, 2010, shortly after the case was removed to this Court, the Court issued a Scheduling Order, requiring the plaintiff to designate expert witnesses by March 30, 2010 and closing discovery on June 15, 2010. *Scheduling Order* at 2 (Docket # 7). Specifically, regarding expert witnesses, the Court ordered:

> Plaintiff(s) shall designate experts required to be disclosed by Fed.R.Civ.P. 26(a)(2)(A) (including treating physicians and other non-retained or specially employed experts) and, with respect to each of them provide a complete statement of all opinions to be expressed and the basis and the reasons therefor by: March 30, 2010.[3]

That order imposed upon Mr. Samaan a more exacting disclosure requirement than Rule 26(a)(2)(A) alone. Mere identification of experts was not sufficient; he was required to disclose the experts' opinions and the bases and reasons for those opinions.

##### b. Plaintiff Designates Dr. Tikoo as his Retained Expert on t-PA Causation and the Treating Physicians as Non-Retained Experts

Consistent with the Scheduling Order, Mr. Samaan designated his expert witnesses on March 30, 2010. *Defs.' Mot.* Attach. 1 *Pl.'s Expert Witness Designations* (Docket # 117). Mr. Samaan designated two retained expert witnesses, Dr. William Stuart and Dr. Ravi Tikoo, and supplied the Rule 26(a)(2)(B)

---

[3] The scheduling order included a corresponding requirement for the Defendants. *Id.* at 2.

information about them.  *Id.*  He also designated unnamed non-retained expert witnesses:

> The Plaintiff further designates each of his medical treatment providers after January 16, 2006, who will testify regarding their treatment of him, the cost of such treatment to date, the level of disability that they have assessed him with, as well as the reasonably foreseeable medical treatment he will require into the future.  Each of the non-retained experts is expected to testify consistent with their medical reports, which are expressly incorporated by reference.  Each such witness will testify based upon their personal knowledge in treating and/or examining Mr. Samaan, as well as their education, training and experience.

*Id.* at 4.  Although the "medical treatment providers" were unnamed for purposes of this motion, they must have included Drs. Hussein and Walsh.

### c.  The Court Excludes Dr. Tikoo Under *Daubert*

After the close of discovery, Dr. Kaplan moved *in limine* to exclude the testimony of Dr. Tikoo.  *Def. David Kaplan, M.D.'s Mot.* in Limine *to Exclude Test. of Ravi Tikoo, M.D.* (Docket # 26).  With the motion *in limine*, Dr. Kaplan moved for summary judgment on the ground that Mr. Samaan's case required expert testimony on causation and as Dr. Tikoo had been the sole medical expert on the question of causation and as his opinion should be excluded, summary judgment was in order.  *Def.'s David Kaplan's Mot. for Summ. J.* (Docket # 24).  Based on the record before it, the Court denied the motions but hinted a more fully developed record might be appropriate.  *Order on Mot.* in Limine at 9 (Docket # 49); *Order Denying Defs.' Mot. for Summ. J.* (Docket # 50).  On October 19, 2010, Dr. Kaplan moved for a *Daubert* hearing on the critical causation question here: whether the failure to inject t-PA more likely than not caused Mr. Samaan to suffer a greater

injury than likely would have resulted if he had received a timely injection.  The Court held an extensive *Daubert* hearing on December 9, 2009, and on December 21, 2010, the Court issued an order excluding Dr. Tikoo as an expert witness on causation.  Daubert *Order*.

### d.  The Court Denies Defendants' Motion for Reconsideration

On December 23, 2010, the Defendants moved for reconsideration of the denial of their earlier motion for summary judgment.  *Defs' First Mot for Recons*. The Court denied the Defendants' motion for reconsideration largely because of a procedural peculiarity; the Court was required to revisit the statements of material fact the parties had filed before the *Daubert* hearing since the Defendants asked to file a new motion, but for reconsideration of the old one.  Not blind to what had transpired since the Defendants had filed their earlier motion, the Court considered the results of the *Daubert* hearing, which compelled the exclusion of Dr. Tikoo's causation opinion and the Plaintiff's misrepresentation of Dr. Nyquist's causation opinion.  However, after excluding Drs. Tikoo and Nyquist, the Court concluded that Mr. Samaan had raised a genuine issue of material fact because he asserted that Drs. Hussein and Walsh would supply the necessary causation opinions.  Because they were on their face sufficient to withstand summary judgment, the Court denied the motion for reconsideration.  *Recons. Order*.  The Court noted that it had not addressed any other reasons to exclude their testimony since these had not been raised.  *Id.* at 16 n.4.  The Defendants then filed the pending motions.

### e.  Non-Retained Fact Experts and Causation Opinions

The Court agrees with the Defendants that Mr. Samaan must be precluded from presenting the expert testimony of Drs. Walsh and Hussein on proximate cause because Mr. Samaan failed to properly designate them as causation experts in compliance with his disclosure obligations.  In his designation of Dr. Tikoo, Mr. Samaan disclosed that "Dr. Tikoo is expected to testify about the reasons that tissue plasminogen activator (t-PA) is administered to patients suspected of suffering from ischemic strokes, the timing that t-PA must be administered within, as well as the efficacy of t-PA in reducing the damages and disability caused by ischemic stroke." *Defs.' Mot* Attach. 3 (*Pl.'s Expert Witness Designations*).  *Id.* at 3.  This designation indicates Mr. Samaan knew it was necessary to designate an expert to testify as to the efficacy of t-PA on ischemic stroke victims.

By contrast, in his designation of his treating physicians (Drs. Hussein and Walsh), Mr. Samaan said they would "testify regarding their treatment of him, the cost of such treatment to date, the level of disability that they have assessed him with, as well as the reasonably foreseeable medical treatment he will require into the future." *Id.* at 4.  There is no mention of t-PA or causation.

Mr. Samaan now argues that the Defendants should have known that Drs. Walsh and Hussein were expected to testify as to the efficacy of t-PA.  He notes that his designation of the treating physicians specifically incorporated by reference the statements within their treatment records.  *Pl.'s Opp'n.* at 7.  He argues that Dr. Hussein's treatment records contain a letter expressing his opinion that t-PA should have benefitted Mr. Samaan, and he notes that Dr. Walsh testified to the efficacy of

t-PA in her deposition.  *Id.*  He contends that the Defendants should have known he would use that as opinion testimony.  *Id.*

Mr. Samaan's arguments are unconvincing.  As regards Dr. Hussein, the Court carefully reviewed Dr. Hussein's treatment notes and finds no reference to a causation opinion in those notes.  *Def.'s Mot.* Attach. 2.  The Defendants objected to Mr. Samaan's attempt to introduce a July 5, 2007 "To Whom It May Concern" letter from Dr. Hussein, and on February 10, 2011, the Court excluded the letter as hearsay in part because the causation opinions in the letter did not, in the Court's view, relate to his "medical diagnosis and treatment."  *Order on Def. David Kaplan, M.D.'s Mot.* in Limine *to Exclude a July 5, 2007 Letter from Elsayed Hussein, M.D.* at 3-4 (Docket # 107) (*Order on Hussein Letter*).  Without the causation letter, which the Court determined was not part of his treatment record, Dr. Hussein's treatment notes do not contain a causation opinion.

Regarding Dr. Walsh, the parties have elected not to supply Dr. Walsh's treatment notes so the Court would ordinarily be at a loss to determine whether she expressed any causation opinions in her medical records.[4]  However, in defending his designation of Dr. Walsh, Mr. Samaan has focused not on the contents of Dr. Walsh's medical record, but exclusively on her deposition testimony.  *Pl.'s Opp'n* at 7 ("Dr. Walsh's testimony addressing the efficacy of t-PA was received during her deposition on September 24, 2009, at which all of the parties were in attendance").  There is no evidence that Dr. Walsh expressed a causation opinion in the hospital

---

[4] During Dr. Walsh's deposition, Mr. Martemucci states that Dr. Walsh did not have a separate medical file and the hospital chart was her medical record.  *Pl.'s Opp'n* Attach. 2 at 19:4-14.

record and it would have been surprising if she had done so, particularly since it was Dr. Kaplan, not Dr. Walsh, who made the t-PA decision.  Furthermore, to the extent Mr. Samaan is relying on Dr. Walsh's expertise as a physician, Dr. Walsh has clarified that she is an internist, not a neurologist, that she has never administered t-PA to a patient suffering from a cerebral vascular accident, and that she is not professionally qualified to express causation opinions.  *Walsh Aff.*

Returning to what the Defendants may have learned through discovery about the opinions of Drs. Hussein and Walsh, at best, the discovery revelations suggest that the Defendants knew that the treating physicians had opinions beyond the expressly designated scope of their expected testimony.  But notice of an opinion is not enough.  "[T]he rules require formal disclosure for a reason:  without it, parties . . . may be hindered in their ability to prepare for trial.  *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 78 (1st Cir. 2009).  By his designation of Dr. Tikoo, Mr. Samaan confirmed his intention to use Dr. Tikoo as his causation expert; his failure to do the same for Drs. Walsh and Hussein left the Defendants unprepared for Drs. Walsh and Hussein to offer an opinion on causation.

This is particularly egregious in this case since the question of whether the failure to administer t-PA had an impact on Mr. Samaan's likely recovery is a highly technical issue at the very heart of the Plaintiff's case and the Defendants' defense.  Early after the close of discovery the Defendants sought to exclude Dr. Tikoo's causation opinion, which led to an extensive *Daubert* hearing, where the causation issue was thoroughly aired by the countervailing testimony from two

subspecialists in the field of neurology, each of whom relied on scientific articles to buttress their opinions. If the Plaintiff had put the Defendants fairly on notice that he expected Drs. Hussein and Walsh to testify about causation, the Defendants could have included their proffered opinions as part of the *Daubert* hearing and obtained a ruling on their causation testimony. Instead, now that Dr. Tikoo has been excluded, Mr. Samaan is attempting to backfill the causation hole in his case by relying on fact witnesses. From the Court's perspective, Mr. Samaan's proposed use at trial of these two experts is manifestly beyond his expert designations.

### f. *Esposito* and Witness Preclusion

As the First Circuit observed in *Esposito*, the Court has a number of options at its disposal for dealing with disclosure violations. *See Esposito*, 590 F.3d at 77-78. "If a party's expert disclosure is untimely," the default rule is that "the party is not allowed to use that witness or relevant expert information 'to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *Id.* at 77 (quoting FED. R. CIV. P. 37(c)(1)). However, preclusion is not automatic, and a district court "may choose a less severe sanction. *Id.* at 77-78 (citing *Santiago-Diaz v. Laboratorio Clinico Y De Referencia Del Este*, 456 F.3d 272, 276 (1st Cir. 2006)). At the same time, where—as here—the parties agree that preclusion will carry the force of dismissal, "the justification for it must be comparatively more robust." *Esposito*, 590 F.3d at 79.

In *Esposito*, the First Circuit delineated several relevant factors before a trial court should exclude a witness: 1) the history of the litigation; 2) the sanctioned

15

party's need for the precluded evidence; 3) the party's reason for non-disclosure; 4) the prejudice to the opponent; and 5) the effect on the court's docket. *Esposito*, 590 F.3d at 78. A final factor is whether a less severe sanction would achieve the same aims as preclusion while still giving the plaintiff his day in court. *Id.* at 80.

### i. History of the Litigation

It is true that Mr. Samaan does not have a history of violating the Court's scheduling orders in this case and does not fit within the "serial violations" factor the First Circuit discussed in *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 45 (1st Cir. 2002) or the "obvious and repeated" dereliction in *Santiago-Diaz v. Laboratorio Clinico y de Ferenencia del Este*, 456 F.3d 272, 277 n.4 (1st Cir. 2002). Nor does the Court characterize his failure to disclose as strategic in nature. *See Esposito*, 590 F.3d at 79.

Nevertheless, Mr. Samaan has failed to take advantage of opportunities to make the required disclosures for Drs. Walsh and Hussein. On July 2, 2010, the Defendants moved for summary judgment in conjunction with the motion *in limine* that ultimately led to Dr. Tikoo's exclusion. Their reasoning was that Mr. Samaan could not prove the proximate cause element of his claim without his causation expert, Dr. Tikoo. These motions should have placed Mr. Samaan on notice that the Defendants were not prepared for a causation expert other than Dr. Tikoo. Yet, in the more than eight months since Dr. Kaplan filed the exclusion and dispositive motions, Mr. Samaan still has not made the required disclosures for any other

causation expert.  The Court finds that the history factor weighs equally for and against preclusion.

### ii.  Mr. Samaan's Need for Precluded Evidence

The parties agree preclusion of Mr. Samaan's expert testimony is tantamount to granting summary judgment.  This weighs against the Court's decision to preclude the testimony.

### iii.  Mr. Samaan's Justification for His Late Disclosure

Mr. Samaan's explanation for his tardy designation is wholly unconvincing. Mr. Samaan acknowledges that the Court did not impose a one-expert per issue rule so he was not prevented from designating Drs. Walsh and Hussein.[5]  *Pl.'s Opp'n*. at 4.  But he insists he was not required to designate either doctor because he intends to call both of them as treating physicians and therefore they are not subject to the rule requiring expert designations.  *Id*. at 6.  Mr. Samaan is correct as far as he goes, but the problem is more complicated.

In his expert designation, Mr. Samaan represented that "[e]ach of the non-retained expert medical providers is expected to testify consistent with their

---

[5] In their motion, without citation to an order, the Defendants state that the Court imposed a one-expert-per-issue rule.  *Defs.' Mot*. at 2 ("This Court, at the plaintiff's insistence, imposed in this case a rule that each party would be limited to one expert per issue").  In response, Mr. Samaan disagrees that the Court ever ordered one-expert-per-issue.  *Pl.'s Opp'n* at 4-5.  Mr. Samaan is correct.  The Defendants cite Mr. Samaan's two motions to limit them to one expert witness per issue.  *Defs.' Mot*. at 2 (citing *Pl.'s Mot. to Limit Defs.' Expert Witnesses* (Docket # 21); *Pl.'s Mot. to Limit Defs.' Expert Witnesses* (Docket # 43)).  But the Court never granted the Plaintiff's motions.  The Plaintiff withdrew the first.  *Pl.'s Mot. to Withdraw Mot. to Limit Defs.' Expert Witnesses* (Docket # 23).  The second motion resulted in an Order, but the Court denied the Plaintiff's motion because the Defendants' designated experts addressed two different issues.  *Order Denying Mot. to Exclude Expert Witness and Mot. for Oral Argument* (Docket # 51).  The Court never ruled that each party would be limited to one expert per issue.

medical reports, which are expressly incorporated by reference."[6]   *Id.*   By designating these physicians as fact witnesses, Mr. Samaan limited himself to their recitation of the medical records that they had generated in their treatment of the Plaintiff.  In its Order dated February 10, 2011, the Court excluded Dr. Hussein's letter dated July 5, 2007 and to the extent Mr. Samaan proposes presenting Dr. Hussein as a fact witness, his remaining medical records do not express causation opinions.  *Order on Hussein Letter*; *Def.'s Mot.* Attach. 2.  This leaves Dr. Walsh. Again, however, Dr. Walsh was designated as a fact witness, not to express causation opinions.  If Mr. Samaan had wished to call either doctor to express medical opinions on t-PA causation, he had the obligation to designate them as such.  He never did.  This factor favors preclusion.

### iv.  The Prejudice to the Defendants

The prejudice to the Defendants is extreme.  Instead of having the opportunity to test the causation opinions of these physicians in a *Daubert* hearing, the Defendants are preparing for trial in April against expert witnesses whose qualifications and opinions have never been properly designated.  In fact, one of the physicians is a St. Joseph employee who has now filed an affidavit saying that she is an internist, not a neurologist, that she has never administered t-PA to a patient suffering from a cerebral vascular accident, and that she is not professionally qualified to express causation opinions.  *Walsh Aff.*  Thus, the Plaintiff is calling one expert, Dr. Hussein, whose causation opinion has never been designated and to the

---

[6] The designation does not identify these physicians but the parties apparently were aware or became aware that they were Drs. Walsh and Hussein.

extent it has been designated, has been excluded, and another expert, Dr. Walsh, whose causation opinion is by her own account beyond her expertise.  This factor weighs strongly in favor of preclusion.

### v.  The Effect on the Court's Docket

The deadline for expert witness designation was nearly one year ago to the day.  *Scheduling Order* at 2.  Since then, Mr. Samaan has not supplemented his disclosures nor has he presented any argument that his failure to do so is justified.  Instead, he has apparently decided that the Defendants should have known his treating physicians would offer opinions beyond those they were expressly designated to provide.  Furthermore, the deadline to complete discovery lapsed on June 15, 2010, over eight months ago.  *Id.*  Even now, with jury selection scheduled for April 5, 2011, Mr. Samaan has not presented the Defendants with a complete statement of all opinions Drs. Walsh and Hussein will express "and the basis and the reasons therefor."  *Id.*  In an effort to skirt summary judgment, he provides little more than bare bones assertions that his experts will opine that t-PA can be effective.

If in the circumstances of this case, the Court is prevented from imposing the automatic exclusion sanction of Rule 37(c)(1), the Court fears its authority to enforce its own scheduling orders will be severely undercut.  Parties will be encouraged to hide opinion experts in fact witness clothing to avoid essential disclosure obligations and when the opponent complains, even at the eve of trial,

the Court will be powerless to prevent the harm to the Court's docket and to the aggrieved opponent. This factor favors preclusion.

### vi. Whether a Less Severe Sanction Would Achieve the Same Aims While Still Giving Mr. Samaan His Day in Court

Here, the Plaintiff has just recently proposed to present causation opinion testimony from two fact-based experts. Consistent with *Esposito*, the Court has considered other alternatives short of preclusion, especially in view of fact that dismissal of Mr. Samaan's case will necessarily be the result. The Court could impose a fine or costs. *Esposito*, 590 F.3d at 80. The Court cannot conclude that a less severe sanction would achieve the same aims.

But for Mr. Samaan's lack of a qualified causation expert, this case is ready for trial. Giving Mr. Samaan leave to make the required disclosures is unlikely to cure the underlying harm because, as the Court explains *infra*, Drs. Walsh and Hussein are not qualified causation experts under *Daubert*. Furthermore, there is no telling how long it would take Mr. Samaan to find a new causation expert or whether he would find one at all. The parties, including Mr. Samaan, and the Court ultimately need to resolve this case in a timely manner. Given Mr. Samaan's continued unwillingness to provide full disclosure and the late stage of the litigation, the Court concludes that preclusion is the only viable option despite its impact on the disposition of this case.

While preclusion is fatal to Mr. Samaan's claim, that alone is not reason enough to allow experts to testify to matters far beyond their designations. *See*

*Harriman v. Hancock County*, 627 F.3d 22, 32 (1st Cir. 2010) ("Reversal based on a sanctioned party's need for precluded evidence are rare, and seldom based on that factor alone").   Because Mr. Samaan's need for causation evidence is the only *Esposito* factor weighing in his favor, the Court finds that preclusion is appropriate.

### 2.   Substantive Admissibility of Expert Testimony

Even if the testimony of Mr. Samaan's proposed causation experts were not precluded on procedural grounds, they are not qualified to testify under *Daubert*. The Court has laid out the standard for admissibility of expert testimony a number of times during the course of this litigation.   More specifically, in its order on the *Daubert* hearing, it thoroughly examined the standard for admitting expert testimony on causation in a Maine medical malpractice action.   *Order on* Daubert *Hr'g* 15-25 (Docket # 91) (Daubert *Order*).   The Court incorporates that reasoning in determining whether the testimony of Drs. Walsh and Hussein is admissible.

As the Court's *Daubert* order explains, impressive qualifications and vast knowledge of t-PA are insufficient to qualify an expert to testify as to whether the failure to administer t-PA more likely than not the caused a plaintiff's injuries.   In that order, the Court considered the testimony of neurologist, Dr. Ravi Tikoo. Daubert *Order* at at 2.   Dr. Tikoo's familiarity with t-PA derived from both the academic and the clinical settings.   He performed research for the National Institute of Neurological Disorders and Stroke (NINDS)—the organization responsible for the preeminent study of t-PA's efficacy—and he had overseen t-PA's administration on patients.   *Id.* 7.   He proffered statistical analyses based on

21

several t-PA studies and his own experience.  *Id.* at 5-9.  The Court noted that Dr. Tikoo's analyses supported t-PA's relative benefit—that stroke patients who receive t-PA are more likely to recover than those who do not.  *Id.* at 22.  However, in this case, Maine's "more likely than not" causation standard requires a showing that one's absolute chance of recovery with t-PA is greater than 50% and that the risk of injury to those who do not receive t-PA is at least double the risk to those who do receive t-PA.  *Id.* at 22-23.  The Court found that Dr. Tikoo could "offer no scientific evidence to meet this standard," so "his opinion [would] not assist the trier of fact." *Id.* at 23.

Mr. Samaan has laid a far weaker foundation for Drs. Walsh and Hussein than for Dr. Tikoo.  Even if Drs. Walsh and Hussein are well-qualified physicians, the Plaintiff has failed to demonstrate their expertise on the narrow question of the causative impact on a stroke victim of the failure to administer timely t-PA meets *Daubert* standards for admissibility of expert testimony.

Dr. Walsh's expertise is in internal medicine, not neurology.  In her deposition she expressed some familiarity with t-PA and agreed that it is likely to benefit many ischemic stroke patients.  *Pl.'s Opp'n.* at Ex. 2 (*Walsh Dep.*) at 20-34. She also indicated that she knows t-PA poses certain risks, and said she defers to the neurologists' decision as to whether it should be administered.  *Id.*  She appears less qualified than Dr. Tikoo to offer an opinion on t-PA's efficacy because she is not a neurologist, has not conducted research on t-PA, has not administered t-PA in a

clinical setting, defers to the neurologists' decision to administer t-PA, and does not appear to have a specific opinion on its efficacy.

Moreover, Dr. Walsh's own affidavit expressly denounces her qualifications to testify. *Walsh Aff.* ¶ 7. Mr. Samaan dismisses her affidavit as an attempt to create an issue of material fact. *Pl.'s Oppn.* at 10. Mr. Samaan is correct to the extent that the Court should be wary of considering affidavits that "clearly contradict[]" "clear answers to unambiguous questions." *Colantuoni v. Alfred Calcagni &Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994). However, "[a] subsequent affidavit that merely explains, or amplifies upon opaque testimony given in a previous deposition is entitled to consideration." *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 26 (1st Cir. 2002). Mr. Samaan points to no contradictions between Dr. Walsh's deposition testimony and her affidavit. He only cites Dr. Walsh's deposition testimony to support the assertion that "[t]he reason [Dr. Walsh] does not administer t-PA is that by the time she sees the patient, who has been hospitalized, the window of opportunity for treatment with t-PA will likely have passed." *Pl.'s Opp'n.* at 9. In context, that portion of Dr. Walsh's deposition states:

> Q. In any of those occasions that we're talking about where you treated patients suffering from acute stroke, did you recognize that TPA was an option of treatment for you to use? . . .
>
> A. Generally, if it was an option and it was indicated, it would have already been given, which is why I have said I didn't give it.

*Id.* at Ex. 2 (*Walsh Dep.*). That statement leaves open the possibility that Dr. Walsh may administer t-PA if the option has not already been foreclosed by the time she sees a patient, but it also indicates that the decision to administer t-PA and the

administration itself is not part of her job.  There is nothing in that statement that contradicts her affidavit statement that she is "not qualified professionally to offer opinions on causation and/or damages in Mr. Samaan's case."  *Walsh Aff.* ¶ 7.  Similarly, there is nothing in her deposition to contradict her affidavit statement that she does not "have a professional medical opinion on the percentage of likelihood of improvement for Mr. Samaan had he received t-PA."  *Id.* 6.  As the Court previously noted, such an opinion is integral to proving causation in this case.

Mr. Samaan has provided less foundation for Dr. Hussein's testimony.  He has merely stated that Dr. Hussein "was the treating physician for Mr. Samaan, a patient recovering from ischemic stroke."  *Pl.'s Opp'n.* at 9.  Dr. Hussein has not been deposed nor provided an affidavit.  The Court knows nothing about Dr. Hussein's practice, his specialization, or his knowledge of t-PA.  Mr. Samaan's silence falls well short of satisfying his of burden of showing Dr. Hussein's "conclusion has been arrived at in a scientifically sound and methodologically reliable fashion."  *United States v. Mooney*, 315 F.3d 54, 63 (1st Cir. 2002).  The Court would bar Dr. Hussein's testimony on the issue of causation.

Finally, Mr. Samaan's citation to recent t-PA studies does not bolster the reliability of the proposed testimony.  As the Defendants' note in their reply, the Court considered similar studies before determining that Dr. Tikoo's causation testimony was inadmissible.  The Court did not rely on the studies alone in considering whether Dr. Tikoo's testimony was admissible.  Instead, it held a *Daubert* hearing in which two experts on t-PA engaged in a rigorous statistical

analysis of the studies' conclusions, which they applied to the specific facts of Mr. Samaan's case.  *See* Daubert *Order* at 4-13.  The articles Mr. Samaan now cites were available then and do not offer conclusions different from the studies cited at the *Daubert* hearing.  Specifically, Mr. Samaan insists the Court should be swayed by one study's conclusion that patients receiving t-PA experience improvement in over 50% of cases.  *Pl.'s Opp'n.* at 11-12.  The Court considered Dr. Tikoo's analysis of a similar figure in the 2008 ECASS-III study.  *Id.* at 23.  The Court observed that the 50% figure alone was insufficient because, under the more likely than not standard, "epidemiological evidence must show that the risk of an injury or condition in the exposed population [i.e. placebo recipients] was more than double the risk in the unexposed or control population [*i.e.* t-PA recipients]."  *Id.* at 24 (quoting *Young v. Mem'l. Hermann Hosp. Sys.* No. H-03-1859, 2006 U.S. Dist. LEXIS 47920 *17-18 (S.D. Tex. Jul. 14, 2006) (alterations added in *Daubert* Order). Not only are the newly-cited studies' conclusions consistent with those previously found lacking, the Court is not aware of the methodologies employed, the statistical bases for the conclusions, whether they are peer-reviewed, and what connection they bear to the proposed testimony of Drs. Walsh and Hussein.

In sum, because Mr. Samaan falls well short of establishing a sufficient foundation for Drs. Walsh and Hussein to testify as causation experts in this case, their testimony on that issue is inadmissible.

### III.   MOTION TO RECONSIDER

Local Rule 7(g) allows parties to file a motion for the Court to reconsider interlocutory orders.   D. ME. LOC. R. 7(g).   To succeed on a motion for reconsideration, the Defendants "must 'demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law.'" *Rooney v. Sprague Energy Corp.*, 581 F. Supp. 2d 94, 98-99 (1st Cir. 2008) (quoting *Palmer v. Champion Mortgage,* 465 F. 3d 24, 30 (1st Cir. 2006).   It is "an extraordinary remedy which should be used sparingly." *Palmer*, 465 F. 3d at 30 (quoting 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2810.1 (2D ED. 1995).   Despite, this high standard, the parties agree that summary judgment should be granted on all claims if the testimony of Drs. Walsh and Hussein is inadmissible.   *Defs.' Mot.* at 9; *Pl.'s Opp'n* at 3.

The relevant new fact before the Court is that Mr. Samaan does not have a causation expert.   In denying the Defendants' previous motion for summary judgment, the Court reasoned:

> The motions for summary judgment are premised on the assumption that Mr. Samaan will not be allowed to present expert testimony that it is more likely than not that Dr. Kaplan's failure to administer t-PA caused harm to Mr. Samaan.  As the Court has separately addressed and denied Dr. Kaplan's motion *in limine* to exclude the testimony of Dr. Ravi Tikoo on the issue of causation, Dr. Kaplan's dispositive motion must share the same fate."

*Order Denying Defs.' Mot. for Summ. J.* at 1 (Docket # 50) (*Summ. J. Mot.*).   The Court then acquired additional facts during the *Daubert* hearing in which it learned that Dr. Tikoo's testimony would not assist the trier of fact on the causation issue

and should not be admitted.  Daubert *Order*.  Roughly two months later, ruling on the Defendants' first motion for reconsideration, the Court found two of Mr. Samaan's statements of material fact sufficient to withstand summary judgment on the causation issue.  *Order* at 14-16.  The first was, "Defendant St. Joseph Hospital's treating physician, Maryann Walsh, M.D., testified that administration of t-PA, barring contraindications, was likely to lessen the effect of ischemic stroke." *Pl.'s Statement of Additional Material Fact* ¶ 7 (Docket # 34) (PSAMF).  The second was, "Elsayed Hussein, M.D., wrote in 2007 that Mr. Samaan should have been administered t-PA, and if he had, the permanent left-sided paralysis would have been avoided."  PSAMF ¶ 13.

With the more developed factual record, the Court concludes that neither statement of fact is sufficient to withstand summary judgment on the causation issue.  Neither Dr. Walsh nor Dr. Hussein is qualified to testify on causation in this case, so the above statements of fact are effectively unsupported.  As a result, Mr. Samaan presents no evidence that the Defendants' failure to administer t-PA caused his injury, there is no genuine issue of material fact on the causation element of the claim, and summary judgment is appropriate.  *See* FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law).

## IV.   CONCLUSION

The Court GRANTS the Defendants' Motion *in Limine* and GRANTS its Motion for Reconsideration.  (Docket # 117).  The Court ORDERS that summary judgment be entered in favor of Defendants St. Joseph Hospital and Dr. David Kaplan.

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE


Dated this 1st day of April, 2011